UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| RIVERSTONE INSURANCE (UK) LIMITED, ON ITS OWN BEHALF AND AS SUCCESSOR-IN-INTEREST TO SPHERE DRAKE INSURANCE LIMITED (F/K/A *INTER ALIA* SPHERE DRAKE INSURANCE PLC) | CIVIL ACTION NO.: 2:20-CV-3 |
| | SECTION: |
| Plaintiff | |
| | JUDGE: JAMES D. CAIN, JR. |
| VERSUS | |
| | MAGISTRATE: KATHLEEN KAY |
| PIONEER NATURAL RESOURCES, INC., AS SUCCESSOR-IN-INTEREST TO MESA OPERATING COMPANY AND MESA OPERATING LIMITED PARTNERSHIP | |
| Defendant | |

## COMPLAINT FOR DECLARATORY JUDGMENT

**NOW INTO COURT**, through undersigned counsel, comes plaintiff, RiverStone Insurance (UK) Limited, on its own behalf and as successor-in-interest to Sphere Drake Insurance Limited (f/k/a *inter alia* Sphere Drake Insurance PLC) (hereafter, "RiverStone"), which brings this action for declaratory judgment against defendant, Pioneer Natural Resources, Inc., as successor-in-interest to Mesa Operating Company and Mesa Operating Limited Partnership (hereafter "Pioneer"); and upon information and belief avers as follows:

1.

This Complaint for Declaratory Judgment is brought in accordance with 28 U.S.C. §§ 2201 and 2202. An actual case or controversy exists between RiverStone and Pioneer.

## PARTIES

2.

Plaintiff, RiverStone, is a foreign insurance company with its principal place of business in the United Kingdom.

3.

Upon information and belief, defendant, Pioneer, is a corporation organized and existing under the laws of the State of Delaware and has its principal place of business in the State of Texas with its registered agent for service of process being CT Corporation System, 3867 Plaza Tower Drive, Baton Rouge, Louisiana 70816.   Upon information and belief, Pioneer Natural Resources, Inc. is the successor to Mesa Operating Company and Mesa Operating Limited Partnership.

## JURISDICTION AND VENUE

4.

This Honorable Court has jurisdiction over the subject matter of this action in accordance with 28 U.S.C. § 1332, as there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

5.

In accordance with 28 U.S.C. § 1332(c)(1), plaintiff, RiverStone, is a citizen of the United Kingdom where it is incorporated and maintains its principal place of business.   Upon information and belief, defendant, Pioneer, is a citizen of the State of Delaware, where it is incorporated, and a citizen of the State of Texas, where it maintains its principal place of business, for the purpose of determining diversity of citizenship.   Complete diversity exists, therefore, between plaintiff, RiverStone, and defendant, Pioneer.

6.

The amount in controversy for a declaratory judgment is the value of the object of the litigation. *St Paul Reinsurance Co., Ltd. v. Greenber*g, 134 F.3d 1250 (5th Cir. 1998).  The object of the litigation is the demand for defense and indemnity coverage made by Pioneer under a policy of insurance issued by Sphere Drake Insurance PLC, RiverStone's predecessor.  *See Comprehensive Addiction Programs v. Mendoza,* 50 F. Supp. 2d 581 (E.D. La. 1999) (in a case for specific performance on a contract, court looked to value of the property involved to determine jurisdictional amount) (citation omitted).  Information provided by Pioneer indicates that indemnification is being sought for damages in excess of the $1,000,000 policy limit.  Accordingly, the demand for indemnity coverage made by Pioneer under the Sphere Drake policy, as well as its demand for defense fees and costs under the Policy, exceed the jurisdictional threshold of $75,000.00, exclusive of interest and costs.

7.

Venue is proper in this judicial district under 28 U.S.C. § 1391(b).  The damages for which Pioneer is seeking indemnity coverage arise from alleged contamination to property located in Jefferson Davis Parish, Louisiana.  Thus, this civil action is being brought in the judicial district in which the property giving rise to the claimed damages is situated, in accordance with 28 U.S.C. § 1391(b)(2).

**FACTUAL BACKGROUND**

8.

A comprehensive general liability policy bearing Certificate Number JHB20240 was issued to Mesa, Inc., and includes Mesa Operating Limited Partnership as a Named Insured, by

Sphere Drake Insurance PLC for the period August 1, 1992 to August 1, 1993; however, through merger, RiverStone has become financially responsible for this insurance policy.

9.

Litel Explorations, LLC, a Louisiana limited liability company, filed what is commonly referred to as a "legacy lawsuit" against Pioneer and others for damages to its property located in Jefferson Davis Parish, Louisiana, arising from oil and gas operations performed by or on behalf of Mesa Operating Limited Partnership and others, which lawsuit is entitled *Litel Explorations, LLC v. Aegis Development Company, L.L.C., et al.,* bearing docket number C823-17 in the 31st Judicial District Court for the Parish of Jefferson Davis, State of Louisiana. ("*Litel* Suit").

10.

The *Litel* Suit alleges, *inter alia*, that Pioneer is liable in damages to plaintiff for damage to its property caused by the negligent drilling and/or operation of the GA Lyon #1 and GA Lyon #1-D Wells pursuant to a lease agreement entered into on June 21, 1990.  Upon information and belief, Mesa Operating Limited Partnership was the operator of record of the GA Lyon #1 Well from August 16, 1992 to May 19, 1994 and the operator of record of the GA Lyon #1-D Well from October 14, 1992 to May 19, 1994.

11.

The *Litel* Suit alleges that the defendants, including Pioneer (which was added as a defendant in the *Second Supplemental and Amending Petition for Damages*), have at various times conducted oil and gas operations on the plaintiff's property, and that these activities have caused and continue to cause the land surface and the ground beneath the surface to be contaminated, polluted and impregnated with oils, grease, naturally occurring radioactive materials (NORM), and other hazardous and dangerous chemicals, equipment, pipes, tanks, and

related appurtenances used and/or generated during the oil and gas exploration and production activities.

12.

The *Litel* Suit further alleges that defendants, including Pioneer, used injection wells to collect their deposits of oil, sludge, saltwater and various and sundry other contaminants and pollutants, and that this has caused the associated useable ground water and/or aquifer to be threatened, impacted, contaminated, polluted and/or become environmentally unsafe.

13.

The *Litel* Suit also alleges that it has suffered damages resulting from improper disposal of oilfield wastes in unlined or inadequately lined earthen pits which were constructed by defendants, including Pioneer, on or near plaintiff's land.  It further alleges that the oilfield wastes deposited in the pits include but are not limited to such substances as Naturally Occurring Radioactive Material ("NORM"), produced water, drilling fluids, chlorides, hydrocarbons and heavy metals, which inevitably results in seepage which contaminates both surface and sub-surface soil and waters and which was known to defendants.

14.

The *Litel* Suit seeks damages for the contamination of plaintiff's land, including testing costs; remediation costs and restoration costs; punitive or exemplary damages; loss of use and lost profits/income; subsidence damages; damages for the unauthorized disposal and injection of off-site saltwater or brines; damages for unauthorized use of its land without compensation to store oilfield waste; and attorneys' fees and costs.

15.

Although not specifically addressed in the *Litel Petition for Damages, First Supplemental and Amending Petition for Damages,* and *Second Supplemental and Amending Petition for Damages,* the *Litel* plaintiff has filed a motion to set trial on mandatory injunction, seeking to have the past operators of the GA Lyon #1 Well, including Pioneer, ordered to plug and abandon the well.

16.

The *Litel* plaintiff alleges that on or about November 2, 2018, it was discovered that the GA Lyon #1 Well was experiencing a high-pressure blowout with an uncontrolled flow of gas and liquids outside the well, which allegedly poses a risk to the health and safety of the general public.   This blowout condition allegedly has continued through the present (hereafter, "Blowout").

17.

The Louisiana Department of Natural Resources allegedly has taken certain steps to contain the Blowout but has been unsuccessful to date and has allegedly depleted the Orphan Well Fund and has no further resources to address the Blowout.

18.

The Louisiana Department of Natural Resources allegedly is looking to past operators of the GA Lyon #1 Well, including Pioneer, to address the Blowout and to plug and abandon the well, as well as for reimbursement of amounts already expended in responding to the Blowout.

19.

A hearing on the *Litel* plaintiff's claim for mandatory injunction and on the Louisiana Department of Natural Resources' claims that the well be plugged and abandoned and for reimbursement is set for January 22, 2020.

20.

Pioneer has tendered a claim to RiverStone for defense and indemnity for the claims asserted against Pioneer in the *Litel* Suit and for the Blowout of the GA Lyon #1 Well under the Sphere Drake policy issued to Mesa.

**THE INSURANCE POLICY**

21.

The Sphere Drake Policy at issue in this civil action, and under which declaratory judgment is sought, is identified as Certificate Number JHB20240 issued to Mesa, Inc. (and including Mesa Operating Limited Partnership as a Named Insured) for the period August 1, 1992 to August 1, 1993.

22.

The terms, conditions, limitations and exclusions contained in the Policy, including any endorsements thereto, are specifically incorporated herein by reference for all purposes as if copied herein *in extenso*.

**I.   DECLARATION THAT RIVERSTONE OWES ONLY ITS SHARE OF DEFENSE FEES AND COSTS ALLOCATED BY TIME ON THE RISK**

23.

RiverStone has agreed to participate in the defense of Pioneer in the *Litel* Suit pursuant to a full and complete reservation of rights under the Policy and at law.

7

24.

The *Litel* Suit encompasses Mesa's leasehold interest in and operations of the GA Lyon #1 Well and the GA Lyon #1-D Well from June 21, 1990 to May 19, 1994.

25.

The *Litel* plaintiff also seeks to have Pioneer respond to the Blowout that allegedly was discovered on or about November 2, 2018, despite Pioneer not operating on the property since 1994.

26.

Under applicable law, RiverStone owes only its proportionate share of defense fees and costs allocated by time on the risk.

27.

RiverStone is entitled to a declaration that it owes only its proportionate share of defense fees and costs according to its time on the risk.

## II.   DECLARATION OF NO COVERAGE FOR DAMAGES ARISING FROM THE "BLOWOUT"

28.

The Policy contains the following Insuring Agreement:

**I.     Coverage A - Bodily Injury Liability**
**Coverage B – Property Damage Liability**

The company will pay on behalf of the **insured** all sums which the **insured** shall become legally obligated to pay as damages because of

**A.     bodily injury or**
**B.     property damage**

to which this insurance applies, caused by an **occurrence**, and the company shall have the right and duty to defend any suit against the **insured** seeking damages on account of such **bodily injury** or **property damage**, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the company shall

not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements.

29.

"Property Damage" is defined in the Policy as follows:

"property damage" means (1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at anytime resulting therefrom, or (2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period;

30.

The Blowout was discovered on or about November 2, 2018, so any damages arising from the Blowout would have occurred at that time or thereafter.  Because the alleged damages arising from the Blowout occurred on or after November 2, 2018—over 25 years after the expiration of the Sphere Drake Policy—the Policy does not provide coverage for those damages.

31.

RiverStone is entitled to a declaration that the Policy does not provide coverage for the claims arising from the Blowout asserted against Pioneer in the *Litel* Suit and that it does not owe Pioneer indemnity for those claims.

## III.   ANY INDEMNITY COVERAGE IS LIMITED TO THAT FOR "PROPERTY DAMAGE" THAT FALLS WITHIN THE SALINE SUBSTANCES CONTAMINATION HAZARD CLAUSE

32.

The Policy contains the following Pollution Exclusion:

This insurance does not apply:

\*   \*   \*

(f)   to bodily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental.

33.

The Policy contains the following Seepage And Pollution Endorsement:

### SEEPAGE AND POLLUTION ENDORSEMENT

Notwithstanding Exclusion (f) of L6395a, it is understood and agreed that this Certificate will only indemnify the Assured for:

1) personal injury or bodily injury or loss of, damage to or loss of use of property directly or indirectly caused by seepage and/or pollution and/or contamination of air and/or land and/or water.

2) the cost of evaluating and/or monitoring and/or removing and/or nullifying and/or cleaning-up seeping and/or polluting and/or contaminating substances.

provided that all of the following conditions have been shown by the Assured to have been met:

A) The occurrence was sudden and was unexpected and unintended;

B) The occurrence first commenced at a specific time and date during the period of this certificate;

    C) The occurrence became known to the Assured within 30 days of its commencement;

    D) The occurrence was reported in writing to Underwriters within 60 days after having become known to the Assured;

    E) The occurrence did not result from the Assured's intentional and willful violation of any government statute, rule or regulation;

## EXCLUSIONS

Nothing contained in this endorsement shall operate to provide any coverage hereon with respect to:

    1) the handling, processing, treatment, storage, disposal or dumping of any waste materials or substances or the transportation of any waste materials or substances;

    2) loss of, damage to or loss of use of property directly or indirectly resulting from subsidence caused by subsurface operations of the Assured;

    3) liability for loss of or damage to any hole or well or in-hole equipment as excluded by Paragraphs 4 and 5 of the Supplemental Exclusion Clauses;

    4) the cost of removing and/or nullifying and/or cleaning up seeping and/or polluting and/or contaminating substances on property owned and/or leased and/or rented by the Assured and/or under the control of the Assured;

    5) liability for damage to oil, gas or other mineral substances which have not been reduced to physical possession above the surface of the earth or water bottom.

Notwithstanding the above, it is understood and agreed that:

    a) the coverage provided under the Saline Substances Contamination Hazard Clause and the Underground Resources and Equipment Hazard Property Damage Clause will remain in effect.

    b) salt water injection or disposal wells are not considered a dump site or a location used in whole or in part of the handling, processing, treatment, storage, disposal or dumping of any waste materials or substances or the transportation of any waste materials or substances.

    c) Specific oil and gas well lease holdings are not considered property owned and/or leased and/or rented and/or under the control of the Assured.

11

All other terms and conditions remain unchanged.

34.

The Policy contains the following Saline Substances Contamination Hazard Clause:

SALINE SUBSTANCES CONTAMINATION HAZARD CLAUSE

This endorsement modifies such insurance as is afforded by the provisions of the Certificate relating to the following:

Comprehensive General Liability Coverage

SCHEDULE

Description of Operations:

1. Oil or gas lease operators
2. Gas lease work
3. Gasoline recovery from casing head or natural gas
4. Oil lease work
5. Oil or gas well shooting
6. Oil or gas well cleaning or swabbing by contractors
7. Oil or gas well drilling or redrilling installation or recovery of casing

It is agreed that:

1. This insurance applies to "property damage" included within the "saline substances contamination hazard" in connection with operations that are described in the Schedule of this endorsement and which are performed by or on behalf of the Named Insured.

2. As used herein, "saline substances contamination hazard" includes property damage to any of the following wherever located:

   (a) oil, gas, water or other mineral substance, if the property damage is caused directly or indirectly by a saline substance; or

   (b) any other property, if the property damage results from property damage described in subdivision (a) above.

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the Certificate, other than as herein stated.

35.

The *Litel* plaintiff alleges that its property is contaminated by various pollutants and/or contaminants, including oils, grease, naturally occurring radioactive materials (NORM), produced water, drilling fluids, chlorides, hydrocarbons, heavy metals and other hazardous and dangerous chemicals used and/or generated during the oil and gas exploration and production activities of the *Litel* defendants, including Pioneer.

36.

Pioneer cannot meet the conditions that are required to occur for coverage under the Seepage and Pollution Endorsement.

37.

The *Litel* plaintiff's damages are excluded from coverage by the Pollution Exclusion and/or Seepage And Pollution Endorsement, unless the damages fall within the Saline Substances Contamination Hazard Clause.

38.

RiverStone is entitled to a declaration that any indemnity coverage afforded by the Policy for the damages claimed by the *Litel* plaintiff is limited to that provided by the Saline Substances Contamination Hazard Clause, if any.

**WHEREFORE**, plaintiff, RiverStone Insurance (UK) Limited, on its own behalf and as successor-in-interest to Sphere Drake Insurance Limited (f/k/a *inter alia* Sphere Drake Insurance PLC), hereby prays that this Honorable Court grant the following relief:

1. A declaration from this Honorable Court that RiverStone is responsible only for its share of defense fees and costs allocated by time on the risk;

2. A declaration from this Honorable Court that RiverStone does not owe indemnity under the Policy for damages arising from the Blowout because the claimed property damage did not occur during the policy period;

3. A declaration from this Honorable Court that any indemnity coverage afforded by the Policy is limited to that provided by the Saline Substances Contamination Hazard Clause, if any;

4. All costs of this lawsuit; and

5. All further necessary or proper relief to which RiverStone may be justly entitled to receive.

Respectfully submitted,

**LARZELERE PICOU WELLS
SIMPSON LONERO, LLC**
Suite 500 - Two Lakeway Center
3850 N. Causeway Boulevard
Metairie, LA  70002
Telephone:  (504) 834-6500
Fax:  (504) 834-6565

BY:  ___*/s/ Angie Arceneaux Akers*_____
**JAY M. LONERO**(No. 20642)
**jlonero@lpwsl.com**
**ANGIE ARCENEAUX AKERS (No. 26786)**
**aakers@lpwsl.com**

**COUNSEL FOR PLAINTIFF, RIVERSTONE INSURANCE (UK) LIMITED, ON ITS OWN BEHALF AND AS SUCCESSOR-IN-INTEREST TO SPHERE DRAKE INSURANCE LIMITED (F/K/A *INTER ALIA* SPHERE DRAKE INSURANCE PLC)**